J-S50040-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| CHEINO STARR ALLEN | : | |
| | : | |
| Appellant | : | No. 641 WDA 2019 |

Appeal from the Judgment of Sentence Entered April 22, 2019
In the Court of Common Pleas of Mercer County Criminal Division at
No(s):  CP-43-CR-0001936-2017

BEFORE:   LAZARUS, J., MURRAY, J., and COLINS, J.[*]

MEMORANDUM BY COLINS, J.:                    **FILED SEPTEMBER 30, 2019**

Appellant, Cheino Starr Allen, appeals from the aggregate judgment of sentence of 12 to 60 months of confinement which was imposed after his convictions at a stipulated bench trial for two counts of receiving stolen property and one count each of possession of marijuana and use of or possession with intent to use drug paraphernalia.[1]  We affirm.

On March 6, 2018, Appellant filed an omnibus pretrial motion which included:  (1) a motion to suppress all evidence obtained pursuant to a search warrant that Appellant alleged was both unlawfully issued and unlawfully executed; (2) a motion to suppress all evidence obtained pursuant to

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S. § 3925(a) and 35 P.S. § 780-113(a)(31), (32), respectively.

Appellant's arrest, which he alleged was an unlawful arrest; and (3) a motion to suppress Appellant's verbal statements to investigators, which Appellant contended were made following an involuntary waiver of his constitutional rights. Omnibus Pretrial Motion, 3/6/2018, at ¶¶ 40-91.

On August 8, 2018, the suppression court[2] held a hearing[3] on Appellant's motions. At the conclusion of the hearing, the suppression court ordered the parties to file briefs. On August 13, 2018, to aid the parties in filing their briefs, the suppression court made the following findings of fact:

1. Scott Patterson is an agent with the Attorney General's Office, where he has been so employed for the last two and a half years.

2. Prior thereto, Agent Patterson was a patrol officer with the Farrell/Southwest Regional Police Department since 2009.

3. Agent Patterson is experienced with controlled buys, having done more than 100 in his career.

4. Agent Patterson has also performed numerous search warrants.

5. In October of 2017, Agent Patterson was involved in an investigation involving [Appellant].

6. A search warrant involving [Appellant] was executed by the Mercer County [Critical Incident Response Team [("CIRT")] at 0602 hours on October 25, 2017.

---

[2] The suppression court was presided over by the Honorable Daniel P. Wallace. The trial court was presided over by the Honorable John C. Reed.

[3] Our scope of review from a suppression ruling is limited to the evidentiary record created at the suppression hearing. *Commonwealth v. Fulton*, 179 A.3d 475, 487 (Pa. 2018).

7.   The CIRT Team performed a knock and announce and proceeded to clear the residence while Agent Patterson and the search team remained outside.

8.   Inside the residence, the CIRT Team found Jaquanna Tyler, her infant son, and two pit bulls.

9.   Once the CIRT Team completed clearing the residence, the search team entered the residence and began to perform a search.

10.   In the upstairs northeast bedroom, a small amount of marijuana and a .40 caliber pistol was found.

11.   A second firearm was found downstairs in a plastic container.

12.   Both firearms were determined to be stolen, one from Butler County and the other from Mercer County.

13.   In the master bedroom, [Appellant]'s wallet and men's clothing was found.

14.   Approximately 15 pairs of men's shoes and men's clothing were found in the bedroom.

15.   In the residence, face masks and gloves were also found, along with digital scales.  $225 was found in the wallet that contained [Appellant's] ID.

16.   An access card belonging to Brandon Gilchrest, a known drug user, was also found in the residence.

17.   In the master bedroom, a THC gummy bear was also found.

18.   At that point, Agent Patterson asked Jaquanna Tyler to contact [Appellant].  She did so and [Appellant] returned to the residence.  [Appellant] was Mirandized[4] at the residence and he understood the Miranda warnings.  After being Mirandized, [Appellant] admitted that the guns and marijuana were his.  There were no threats of any kind made to [Appellant] while he was in the residence answering the questions.

19.   The firearms were loaded.

_____

4 *Miranda v. Arizona*, 384 U.S. 436 (1966).

20. On cross examination, Agent Patterson testified that there was no continued surveillance of the residence at 623 Fruit Avenue, Farrell, Pennsylvania.

21. The search warrant was dated October 23, 2017, and there was a requirement that it be executed by October 25, 2017.

22. Agent Patterson reported that other police officers also filed reports concerning the search of 623 Fruit Avenue, Farrell, PA.

23. Pursuant to standard operating procedure, Agent Patterson called the CIRT commander to advise him of the search warrant that he had for 623 Fruit Avenue and thereafter, the CIRT commander would take care of organizing the execution of the search warrant.

24. Other individuals that were on scene in addition to the CIRT Team members were Officer Settle, the K-9 officer, Assistant District Attorney Reichart, State Trooper [Bradley] Wolak, and Detective Songer.

25. The CIRT Team performed the entry into the residence while the rest of the search team remained in the perimeter.

26. Aside from the knock and announce, it was difficult for Agent Patterson to hear the CIRT Team.

27. Agent Patterson confirmed with the CIRT commander by text the entry time.

28. The house was dark at the time of the execution of the search warrant.

29. Again, two individuals were determined to be in the residence, they being Jaquanna Tyler and her infant.

30. At some point in time, the crowd began to gather outside the residence and eventually become unruly.

31. When questioned, Jaquanna Tyler said she was the only resident of the house, aside from her infant, and that [Appellant] would baby-sit the infant on occasion. She also indicated that everything in the house belonged to her.

32. There were no indicia of [Appellant] connecting him to the upstairs firearm.

33. 623 Fruit Avenue, Farrell, PA, is owned by a Thomas Dean.

34. There was no lease obtained showing that [Appellant] was leasing the residence.

35. Jaquanna Tyler was advised that in order to avoid arrest, she was to call [Appellant]. She proceeded to do so. [Appellant] came to the residence but initially refused to come into the house.

36. Detective Songer eventually persuaded [Appellant] to come into the house due to the crowd becoming unruly.

37. Once [Appellant] was inside the house, he was Mirandized and, again, he indicated his understood his Miranda rights.

38. Defendant admitted to Detective Songer that he knew that Jaquanna Tyler would likely go to jail due to what was found in the residence.

39. The .38 that was found on the first floor was stolen from Mercer and was stolen on August 13, 2017.

40. There was no transaction between the confidential informant [("C.I.")] and [Appellant] performed at the residence. There was no witness observing drug cutting at the residence. There was no recovery of buy money from [Appellant]. There were no dates of transactions aside from the week of the transaction.

41. There was no monitoring of the house nor were there complaints of the neighbors.

42. The Porsche owned by [Appellant]'s mother and operated by [Appellant] for the last two years was not at the residence.

43. There were no fingerprints on any guns.

44. Trooper Wolak participated in Jaquanna Tyler's interview.

45. On redirect, Agent Patterson testified that [Appellant] originally was from Detroit[,] Michigan.

46. [Appellant] had an extensive criminal record.

47. The [C.I.] used in the controlled buys was a trustworthy source.

48. The C.I. performed three buys. The exact date of the controlled buys was limited to the week of the buy in the affidavit

attached to the search warrant in order to keep the [C.I.] protected.

49. No one but the C.I. and [Appellant] performed the drug transactions in question.

50. [Appellant] delivered heroin to the C.I. from 623 Fruit Avenue, Farrell, PA, and returned to 623 Fruit Avenue, Farrell, PA.

51. It would be common that [Appellant] would not be on the deed to the residence.

52. Agent Patterson testified that [Appellant] would have been charged regardless of whether he came back to 623 Fruit Avenue at the request of Jaquanna Tyler.

53. The search warrant was sealed.

54. Jaquanna Tyler's work records were never pulled in order to determine whether [Appellant] was baby-sitting.

55. Corporal Daniel Young is a Hermitage police corporal and also the assistant commander of the Mercer County CIRT Team.

56. On October 25, 2017, at 0530 hours, Corporal Young and the CIRT Team performed a pre-op briefing.

57. At 0600 hours, the CIRT Team arrived at the target residence.

58. The CIRT Team arrived at the front of the residence and the CIRT Team was stacked up according to standard operating procedure.

59. The CIRT Team performed a knock and announce and used the following phrase: "Police. Search warrant. Come to door." They performed this knock and announce for close to a minute.

60. They then proceeded to breach the door and "break and rake" a side window and utilized a diversionary device.

61. Eventually Corporal Young testified that Jaquanna Tyler was directed to sit on the couch in a living room.

62. After the CIRT Team is done clearing the residence, the search team was deployed.

63. The standard operating procedure for the CIRT Team to perform their pre-op meeting was at 0530.

64.     There were 10 to 12 CIRT Team members participating in the execution of the search warrant.

65.     The standard operating procedure is that when the CIRT Team arrived at the site, the commander, or in this case, the assistant commander, Corporal Young, would call Mercer County Dispatch.

66.     While executing the search warrant, the CIRT Team utilized a secure radio at the scene.

67.     Corporal Young testified that he did not see when Jaquanna Tyler was first seen by other CIRT Team members.

68.     The CIRT Team stayed on the scene until 0822 hours.

69.     Finally, Corporal Young testified there were two pit bulls located in the residence.

70.     The parties stipulated that Officer Jamie Brown did not enter the house prior to the command to do so.

71.     Trooper Brad Wolak is a trooper with the Pennsylvania State Police.

72.     On October 25, 2017, Trooper Wolak was assisting Agent Patterson in the search of the residence in question.

73.     Trooper Wolak indicated he spoke to Jaquanna Tyler at some point.

74.     In the search of the residence, Trooper Wolak confirmed that in the upstairs bedroom, Jaquanna Tyler's handgun, which was legally purchased and owned, and edible marijuana was found.

75.     In the game room located upstairs, a stolen gun was found. Also found upstairs was [Appellant]'s wallet and men's clothing.

76.     In the residence, masks and gloves were found, which are used in the prepping of heroin.  Also found was a mason jar with a false bottom.

77.     Finally, in the hallway located downstairs, a handgun was found in a bank bag along with a bank statement.  The handgun was determined to be stolen.

78.  Trooper Wolak testified that [Appellant] eventually agreed to come in the residence, at which time he was Mirandized.

79.  Trooper Wolak testified that there were no threats or coercion used during the questioning of [Appellant] following his being Mirandized.

80.  [Appellant] said he broke his phone.

81.  [Appellant] also said during questioning that he stayed there at the residence but did not live there.

82.  On cross examination, Trooper Wolak testified that he was inside the residence when [Appellant] arrived.

83.  He also testified that the crowd was becoming unruly and that [Appellant] had been handcuffed outside the residence.

84.  Trooper Wolak testified that [Appellant] initially refused to come inside of the residence but then agreed.

85.  Trooper Wolak also testified that Jaquanna Tyler and the infant were found in the residence when the search warrant was executed and that Jaquanna Tyler legally owned and possessed one of the guns that was found.

86.  Finally, [Appellant] initially denied ownership of the stolen handguns and marijuana

Findings of Fact, 8/13/2018, at 1-11.  After the parties had filed their briefs, on October 30, 2018, the suppression court denied Appellant's omnibus pretrial motion in its entirety and entered an opinion in support of its order.

On February 15, 2019, Appellant agreed to a stipulated bench trial, and the notes of testimony from the suppression hearing were entered into evidence.  Appellant was convicted of the aforementioned charges, and he was sentenced on April 22, 2019.  Later that same day, he filed a timely notice of appeal and the following statement of errors complained of on appeal:

> **AND NOW**, comes the Defendant, Cheino Allen, and files this Concise Statement of Matters Complained of on Appeal:

1.    Defendant contends that his conviction is against the sufficiency of the evidence.

2.    Defendant contends that his conviction is against the weight of the evidence.

3.    Defendant contends that the trial court committed reversible error by denying his pretrial motion to suppress evidence because the search warrant was issued unlawfully as there was insufficient information contained within the warrant that would allow a neutral and detached magistrate and/or judge to conclude that there was sufficient probable cause to believe evidence of a crime would be located inside the residence subject to the search warrant.

4.    Defendant contends that the trial court committed reversible error by denying his pretrial motion to suppress evidence as he was subjected to an unlawful arrest of his person by the investigating police officers following the execution of the search warrant.

5.    Defendant contends that the trial court committed reversible error by denying his pretrial motion to suppress evidence because the statements he made during his custodial interrogation were the product of duress, coercion and undue influence and, therefore, there was no valid waiver of his Constitutional right against self-incrimination as guaranteed by the Fifth Amendment of the United States Constitution and Article I §9 of the Pennsylvania Constitution.

6.    Defendant contends that the trial court committed reversible error by denying his Petition for Writ of Habeas Corpus Relief because the Commonwealth failed to demonstrate a prima facie case concerning any of the charges filed against him.

Statement of Matters Complained of on Appeal, 4/22/2019, at 1-2.  The trial court entered its opinion pursuant to Pa.R.A.P. 1925(a) on May 30, 2019.

Appellant now presents the following issues for our review:

[1.] Challenge to the Executed Warrant - Whether the Pennsylvania Attorney General's Office violated the "knock and announce" rule by failing to allow for a reasonable opportunity for peaceful entry into the target home?

- 9 -

[2.] Challenge to Sufficiency of Evidence -- Whether the evidence introduced at trial was insufficient to prove [Appellant]'s guilt to two counts of Receiving Stolen Property, involving a firearm, Possession of Marijuana and Possession of Drug Paraphernalia?

[3.] Challenge to the Search Warrant — Whether the Pennsylvania Attorney General's Office failed to establish the existence of probable cause in the application of the search warrant when they did not sufficiently show that evidence of a crime would be recovered from the target address?

[4.] Challenge to the Legality of Arrest - Whether [Appellant]'s warrantless arrest was unlawful since the Pennsylvania Attorney General's Office lacked probable cause that [Appellant] committed a violation of law?

[5.] Challenge to the Legality of Statement - Whether [Appellant]'s constitutional rights against self incrimination were violated when he made statements that were not a product of a voluntary waiver due to the overzealous and threatening behaviors from the Pennsylvania Attorney General's Office?

Appellant's Brief at 7-8 (issues re-ordered to facilitate disposition).

Preliminarily, we note that Appellant's first challenge, concerning the execution of the search warrant, was not included in his statement of errors complained of on appeal, which is reproduced in its entirety above. **Compare** Statement of Matters Complained of on Appeal, 4/22/2019, at 1-2, **with** Appellant's Brief at 8. Appellant hence has failed to preserve this issue for appeal. **See** Pa.R.A.P. 1925(b)(4)(ii), (vii) ("The Statement shall concisely identify each ruling or error that the appellant intends to challenge with sufficient detail to identify all pertinent issues for the judge"; "[i]ssues not included in the Statement and/or not raised in accordance with the provisions of this paragraph (b)(4) are waived"); **In re A.B.**, 63 A.3d 345, 350 (Pa.

- 10 -

Super. 2013) (appellant's concise statement of matters complained of on appeal must properly specify error or errors to be addressed on appeal); **Tucker v. R.M. Tours**, 939 A.2d 343, 346 (Pa. Super. 2007).

We further observe that "[i]n order to preserve a challenge to the sufficiency of the evidence on appeal, an appellant's Rule 1925(b) statement must state with specificity the element or elements upon which the appellant alleges that the evidence was insufficient." **In re J.G.**, 145 A.3d 1179, 1189 (Pa. Super. 2016) (citation omitted). In his Rule 1925(b) statement, reproduced in its entirety above, Appellant does not state with specificity the element or elements upon which he alleges that the evidence was insufficient -- or even which of his convictions he is challenging.[5] Statement of Matters Complained of on Appeal, 4/22/2019, at 1 ¶ 1. Appellant has therefore failed to preserve his challenge to the sufficiency of the evidence. **See J.G.**, 145 A.3d at 1189.

---

[5] Although Appellant's statement of questions involved clarifies that Appellant is challenging the sufficiency of the evidence as to all of his convictions, this statement also fails to specify which element or elements Appellant is challenging. Appellant's Brief at 7.

To the extent that the "Argument" section of his brief indicates that he is challenging the element of possession for all of the charges, **id.** at 19, and assuming that Appellant had preserved his sufficiency challenge, we would still conclude that Appellant's claim merits no relief and that the trial court opinion dated May 30, 2019, comprehensively discusses and properly disposes of that issue. **See** Trial Court Opinion, filed May 30, 2019, at 14-16.

- 11 -

Next, we consider Appellant's remaining suppression issues in light of the following standard of review:

> In reviewing the denial of a suppression motion, our role is to determine whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, we are bound by these findings and may reverse only if the court's legal conclusions are erroneous. Where, as here, the appeal of the determination of the suppression court turns on allegations of legal error, the suppression court's legal conclusions are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts. Thus, the conclusions of law of the courts below are subject to our plenary review.

*Commonwealth v. Yim*, 195 A.3d 922, 926 (Pa. Super. 2018) (citations and internal brackets omitted).

After a thorough review of the record, the briefs of the parties, the applicable law, and the well-reasoned opinion of the Honorable Daniel P. Wallace we conclude Appellant's suppression issues merit no relief. The suppression court opinion dated October 30, 2018, properly discusses and disposes of those questions. *See* Suppression Court Opinion, filed October 30, 2018, at 5–6, 8-12 (not paginated) (finding: (1) examining the search warrant in the light of the totality of the circumstances, the suppression court found that probable cause existed for the issuance of the search warrant; (2) "there was sufficient probable cause to [a]rrest [Appellant] without a warrant," because his "arrest was made pursuant to the illegal guns and

- 12 -

marijuana found in the residence"; and (3) Appellant made his statement to Agent Patterson that the illegal firearms and drugs were his and not Tyler's after he had been given his ***Miranda*** warnings and had knowingly, voluntarily, and intelligently waived those rights).  Accordingly, we affirm on the basis of the suppression court's opinion of October 30, 2018.  The parties are instructed to attach the opinion of the suppression court in any filings referencing this Court's decision.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/30/2019

FILED IN MERCER COUNTY

2018 OCT 30 PM 1:48

KATHLEEN ... ...
CLERK AND REGISTER

IN THE COURT OF COMMON PLEAS OF MERCER COUNTY, PENNSYLVANIA
CRIMINAL

COMMONWEALTH OF
PENNSYLVANIA

vs.                                No. 1936 CR 2017

CHEINO STARR ALLEN

## OPINION

**Wallace, J.**

Presently before the Court is the defendant's Omnibus Pretrial Motion to Suppress Evidence and Statements

### Facts

Chieno Allen ("Allen") is challenging the application of the search warrant, the execution of the search warrant, Allen's arrest without a search warrant, and the statements made by Allen to police. Testimony regarding these challenges was heard on August 8, 2018. Following the receipt of testimony, this Court issued Findings of Fact regarding the same which are summarized below.

Attorney General Agent Scott Patterson was involved in an investigation involving Allen. Pursuant to a confidential informant's interactions with Allen, a search warrant was obtained and executed by the Mercer County Critical Incident Response Team ("CIRT") team at 0601 hours on October 25, 2017 for 623 Fruit Avenue, Farrell, PA. This particular warrant was dated October 23, 2017 and was required to be executed





by October 25, 2017. The confidential informant had no specific dates of transactions, aside from the week of this transaction, to keep the confidential informant's identity safe. In the week of the transactions, three controlled buys of heroin were conducted between the confidential informant and Allen. During each controlled buy, surveillance observed Allen leave 623 Fruit Avenue, meet the confidential informant, and return to 623 Fruit Avenue. Agent Patterson knew the confidential informant to be a trustworthy source. Prior to the search warrant, there was no monitoring of the house in question, nor were there complaints of the neighbors. Agent Patterson called the CIRT commander to advise him of the search warrant pursuant to standard operating procedure. The CIRT commander then took care of organizing the search team and performed entry into the residence. Agent Patterson later confirmed with the CIRT commander the time of entry by text message.

The CIRT team performed the "knock and announce" at 6:01 AM using the following phrase, "Police. Search warrant. Come to door." They used this announcement for close to a minute before breaching the door and "breaking and raking" a side window and proceeded to clear the residence. Inside the residence were Jaquanna Tyler ("Ms.Tyler"), her infant son, and two pit bulls. Jaquanna Tyler said that she was the only resident of the house, aside from her infant, and Allen would baby-sit on occasion. There was no lease obtained showing that Allen was leasing the residence. Pursuant to a search of the residence, the CIRT team found the following: 1) a small amount of marijuana; 2) .40 caliber loaded pistol determined to be stolen; 3) a second loaded firearm determined



to be stolen; 4) Allen's wallet; 5) men's clothing and 15 pairs of men's shoes in the master bedroom; 6) face masks and gloves; 7) digital scales; 8) $225 found in the wallet; 9) an access card belonging to Brandon Gilchrest; and 10) a THC gummy bear.

Agent Patterson asked Jaquanna Tyler to contact Allen. Jaquanna Tyler was advised that in order to avoid her arrest, she must call Allen. After she contacted Allen, he returned to the residence. Initially, he refused to come into the house, but was persuaded due to the crowd becoming unruly. Once inside the residence, Allen was Mirandized and stated he understood the Miranda warnings. At first, Allen denied ownership of the stolen handguns and marijuana. Allen admitted to Detective Songer that he knew that Jaquanna Tyler would likely go to jail due to what was found in the residence. Allen then further admitted that the guns and marijuana were his, not Ms. Tyler's. Detective Songer testified that there were no threats made to the defendant while he was answering the questions. Allen further stated he stayed at the residence but did not live there. Allen was then placed under arrest.

## Scope of Review

Under both Article I, Section 8, of the Pennsylvania Constitution and the Fourth Amendment, the existence or lack of probable cause for the issuance of a search warrant is determined according to a "totality of the circumstances" test. *Commonwealth v. Gray*, 509 Pa. 476, 485, 503 A.2d 921, 926 (1985) (following *Illinois v. Gates*, 462 U.S. 213 (1983)). "The task of the magistrate acting as the issuing authority is to make a 'practical, common sense assessment' of whether, 'given all the circumstances set forth in the

affidavit,' a 'fair probability' exists that contraband or evidence of a crime will be found 'in a particular place.'" *Commonwealth v. Huntington*, 924 A.2d 1252, 1255 (Pa. Super. 2007) (quoting *Commonwealth v. Murphy*, 916 A.2d 679, 682 (Pa. Super. 2007)). The issuing authority must make its determination based on the averments contained within the four-corners of the affidavit attached to the warrant application. Pa. R. Crim. P. 203(B, D). However, the existence of probable cause must be determined in light of "the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." Gray, 509 Pa. at 483, 503 A.2d at 925. The role of a reviewing court is to determine whether the issuing authority appropriately determined that probable cause existed, but the reviewing court must also accord deference to the issuing authority's finding of probable cause. *Huntington*, 924 A.2d at 1256.

## Law and Discussion

### I.    Sufficiency of the Search Warrant

In his motion to suppress the evidence found pursuant to the search warrant, Allen first argues that the search warrant did not provide sufficient factual averments to support a finding of probable cause. While this Court must determine whether probable cause existed given the totality of the circumstances, *Gray*, 509 Pa. at 485, 503 A.2d at 926, the value of each element in the affidavit must be examined in turn. A magistrate is to make a practical common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the veracity and basis of knowledge of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will

be found in a particular place. *Commonwealth v. Jones,* 542 Pa. 418, 424, 668 A.2d 114, 116 (1995).

### a. Lack of Probable Cause to Execute a Search Warrant

Allen first argues that the affidavit in the instant case provides no reference to establish a sufficient basis that Allen resided at the residence contained in the affidavit. Allen concedes that the investigating officers observed Allen leave the residence to meet with the confidential informant and then return to the residence after meeting with the confidential informant. However, Allen argues that this evidence is insufficient to establish that he resided at the target residence, unlike the *Gagliardi* case. 128 A.3d 790 (Pa. Super. 2015). Allen contends that the details of the affidavit fail to establish a nexus between the alleged drugs and the residence.

The *Gagliardi* decision is analogous to this case. In *Gagliardi,* the police utilized a confidential informant to make two separate controlled buys from Defendant. *Gagliardi,* 128 A.3d 790 at 797. In each controlled buy, the police observed the defendant leave the residence, go directly to the meeting point, sell the cocaine to the confidential informant, and walk directly back to the residence. *Id.* Further, in *Gagliardi,* investigating police officers were able to corroborate the defendant's residence information provided by the confidential informant on two separate occasions when they observed the defendant exit the address provided by the confidential informant and meet at the designated location to participate in the alleged drug transaction. *Id.* The Superior Court held in *Gagliardi,* that "viewing the totality of the circumstances in a practical,

common- sense manner, the substantial evidence in the record supports the issuing authority's conclusion that there was a 'fair probability' that contraband would be discovered" in the residence. *Id.* Here, the investigators were informed that Allen resided at 623 Fruit Avenue and this address was corroborated on three separate occasions, including an occasion within forty-eight hours of the execution of the search warrant. Additionally, the investigators watched Allen leave 623 Fruit Avenue, meet the confidential informant, and then walk back to 623 Fruit Avenue, in each controlled buy. Therefore, pursuant to *Gagliardi* there is substantial evidence to establish a common sense finding of probable cause to search the residence of 623 Fruit Avenue.

### b. *Execution of the Search Warrant*

Next, Allen argues that the CIRT team violated the requirements of the "knock and announce rule" and unlawfully executed the search warrant. PA. R. Crim. P. 207 codifies the mandates of the knock and announce rule, as defined below:

> (A)A law enforcement officer executing a search warrant shall, before entry, give, or make reasonable effort to give, notice of the officer's identity, authority, and purpose to any occupant of the premises specified in the warrant, unless exigent circumstances require the officer's immediate forcible entry.(B) Such officer shall await a response for a reasonable period of time after this announcement of identity, authority, and purpose, unless exigent circumstances require the officer's immediate forcible entry. (C) If the officer is not admitted after such reasonable period, the officer may forcibly enter the premises and may use as much physical force to effect entry therein as is necessary to execute the search.

Allen argues that the officers failed to provide the occupant with a reasonable opportunity to allow for peaceful entry into her home. The CIRT team arrived at 0601 AM, there were no lights on in the house, and the team observed no movement, however, they

waited approximately one minute before entering the residence. Allen contends that under the totality of the circumstances test, one minute was not sufficient time to permit forcible entry or declare that it satisfied the knock and announce requirements due to a short time frame during hours where it is readily apparent from the officer's own observations that the occupants of the home are sleeping.

There are only four exceptions to the "knock and announce rule" recognized by the Pennsylvania Supreme Court: 1) The occupants remain silent after repeated knocking and announcing; 2) The police are virtually certain that the occupants of the premises already know their purpose; 3) The police have reason to believe that an announcement prior to their entry would imperil their safety; or 4) The police have reason to believe that evidence is about to be destroyed. *Commonwealth v. Chambers*, 528 Pa. 403, 598 A.2d 539 (1991). The first exception is at issue in this case where the occupant of 642 Fruit Ave remained silent after repeated knock and announcing done by the CIRT team for approximately one minute.

In *Commonwealth v. Rudisil*, the court held that when a court is evaluating the lawfulness of an entry into a residence following "knock and announce," the court must consider whether the delay in making entry was a reasonable one. 622 A.2d 397 (Pa. Super. 1993). The court further held in *Commonwealth . v. Parsons*, that after law enforcement made two announcements of their presence; then waited 45 seconds; and then heard sounds of movement inside, that such knock and announce was sufficient to breach without further delay. 570 A.2d 1328 (Pa. Super. 1990). Here, the CIRT team



executed their search warrant at 0601 AM by first pounding on the door with a fist repeatedly and yelling to announce their presence. The knock and announce took place for nearly one minute and when the occupants were still silent after a minute, the CIRT team then made entry into the residence at 0602 am. Pursuant to *Commonwealth v. Parsons*, one minute is a sufficient amount of time to execute a knock and announce before entering the residence. Therefore, pursuant to *Parsons,* the execution of the search warrant was lawful.

## II.    Sufficiency of the Arrest and Waiver of Miranda Warning

In addition to challenging the sufficiency of the search warrant, Allen also argues that his arrest was unlawful and any statements made by him were done without a voluntary waiver of his constitutional rights. Furthermore, Allen argues that any statements he made were the product of overzealous and threatening behaviors of the investigating officers. To establish the requisite probable cause to effectuate a warrantless arrest, there must be a finding that the facts and circumstances within the officer's knowledge at the time of the arrest are sufficient to warrant a man of reasonable caution to believe that an offense has been committed and the person arrested committed said offenses. *Commonwealth v. Johnson*, 467 Pa. 146, 354 A.2d 886 (1976). In determining if a defendant's statement is admissible, "the touchstone inquiry is whether the confession was voluntary." *Commonwealth v. Nester*, 551 Pa. 157, 162-63, 709 A.2d 879, 882 (1998). The voluntariness of the statement is determined from the totality of the circumstances surrounding the statement. *Nester*, at 163.

a. *Validity of an Arrest Without a Warrant*

Allen first argues that his arrest without a warrant was unlawful. In *Commonwealth v. Simmen*, the Superior Court discussed the standard for probable cause to make a valid warrantless arrest, stating that a "police officer has probable cause to make a warrantless arrest when the facts and circumstances within the police officer's knowledge and of which the officer has reasonably trustworthy information are sufficient in themselves to warrant a person of reasonable caution in the belief that an offense has been committed by the person to be arrested." 58 A.3d 811 (Pa. Super. 2012). The Superior Court further stated that determining probable cause is based upon the "totality of the circumstances." *Id.* Additionally, "probable cause to make a warrantless arrest does not involved certainties, but, rather the factual and practical considerations of everyday life on which reasonable and prudent persons act." *Id.*

In *Commonwealth v. Parish,* the Superior Court defined constructive possession as conscious dominion, meaning that the defendant has the power to control the contraband and the intent to exercise that control. 191 A.3d 31 (Pa. Super. 2018). Further, constructive possession may be proven by circumstantial evidence. *Commonwealth v. Haskins,* 450 Pa. Super. 540, 677 A.2d 328, 330 (1996). Here, Allen was observed on three separate occasions by law enforcement, within ten days of execution of the search warrant, leaving the residence to make three separate drug deliveries to the confidential informant, and then walking back into the residence. Pursuant to the search warrant, law enforcement recovered two stolen firearms and a multitude of drug paraphernalia in 623

Fruit Avenue. Additionally, law enforcement recovered Allen's wallet, his ID, cards with Allen's name on it, men's clothing, and approximately 15 pairs of men's shoes. The occupant of the residence, Ms. Tyler, stated to law enforcement that Allen would come to the residence to watch their infant son. Therefore, the facts and circumstances known to law enforcement when the search warrant was executed were sufficient to warrant a person to believe that an offense had been committed by Allen.

b. *Validity of Waiver of Constitutional Rights*

Next, Allen argues that the facts and circumstances surrounding his interview confirm that his statements were not the product of a voluntary waiver of his constitutional rights, but were the product of overzealous and threatening behaviors of the investigating officers. Further, Allen asserts that the statements extracted from him were obtained in violation of the Allen's Constitutional rights against self-incrimination and must be excluded from future proceedings brought against him.

In *Commonwealth v. Nester,* the Court stated that when assessing the voluntariness pursuant to the totality of the circumstances, a court should look at the following factors: the duration and means of the interrogation; the physical and psychological state of the accused; the conditions attendant to the detention; the attitude of the interrogator; and any and all other factors that could drain a person's ability to withstand suggestion and coercion. 709 A.2d 879 (Pa. 1998). Further in *Commonwealth v. Smith,* the defendant was living with his girlfriend when their residence was searched. 85 A.3d 530 (Pa. Super. 2014). The defendant's girlfriend was arrested and later on the



defendant voluntarily appeared at the police station to talk to the police. *Id.* He asked if his girlfriend would be released if he turned himself in. *Id.* at 538. An officer responded to the defendant "as far as I know, yes." *Id.* Furthermore, the officer told the defendant that if someone else takes responsibility for the contraband, then the police typically drop the charges against anyone else. *Id.* The officer testified that "he did not use [the girlfriend's] arrest as leverage to induce [the defendant's] confession and that he did not make any promises to [the defendant] in return for his confession." *Id.* The Superior Court of Pennsylvania held that, under the totality of the circumstances, the Defendant's confession was not coerced. *Id.*

This case is similar to *Smith:* Agent Patterson told Allen that Ms. Tyler, his child's mother, would be under arrest if Defendant did not come to the residence to speak with the police. When Allen arrived, he was given Miranda warnings by Agent Patterson before Allen was asked any questions. While speaking with the Agent, Allen admitted that the stolen firearms were his and not Ms. Tyler's. Further, Allen admitted that the drugs found in the residence were his as well. The Agent further testified that he did not threaten or coerce Allen into making a statement. Allen gave his statement to the Agent shortly after arriving at the residence. Allen was not threatened or coerced. Allen was made aware of the situation and what steps the police would take due to the items they recovered from the residence. Police brought the conversation inside of the residence due to safety concerns regarding the crowd outside. Under the totality of the circumstances, Allen's confession was not coerced or under threat of the police. He was Mirandized by

Agent Patterson and voluntarily gave his statement to the police as the defendant did in *Smith.* It has not been shown that Allen's statement to Agent Patterson was pursuant to threat or coercion.

## Conclusion

Examining the search warrant in light of the totality of the circumstances, this Court finds that probable cause did exist for the issuance of the search warrant for 623 Fruit Avenue. The search warrant was executed within the time frame allotted and the "knock and announce" was sufficiently performed for one minute prior to entry. Further, an arrest was made pursuant to the illegal guns and marijuana found in the residence. Only after being Mirandized did Allen make a statement to Agent Patterson that the illegal guns and drugs were his and not Ms. Tyler's. Therefore, the probable cause was sufficient to obtain and execute a search warrant for 623 Fruit Avenue, there was sufficient probable cause to Arrest Allen without a warrant, and the statements Allen made were made knowing, voluntary, and intelligent due to his Miranda waiver.

**HENCE THIS ORDER:**

FILED IN MERCER COUNTY

2018 OCT 30 PM 1:49

KATHLEE... ...
CLERK AND REGISTER

IN THE COURT OF COMMON PLEAS OF MERCER COUNTY, PENNSYLVANIA
CRIMINAL

COMMONWEALTH OF
PENNSYLVANIA

vs.

CHEINO STARR ALLEN

No. 1936 CR 2017

**ORDER**

AND NOW, this 26th day of October 2018, upon review of the Defendant's Omnibus Motion and the Commonwealth's Response thereto, IT IS HEREBY ORDERED that the Defendant's Omnibus Motion to Suppress Evidence and Statements is DENIED.

BY THE COURT:

_____, J.
Daniel P. Wallace, Judge